This is Revelex. May it please the Court, Thomas Hunker on behalf of the appellant software company Revelex. I'd like to get right to the question that the Court sent us in its letter to the parties regarding the Ivy case. Essentially what the Court has asked is whether the exculpatory clause can be selectively applied either to bar the negligence claim or the breach of contract claim. And the answer to that question is in the distinction between the Ivy case. It looked to me like the Florida courts look at this on a claim-by-claim basis, and it might be that the exculpatory clause would be invalid insofar as it would mean no liability for a breach of contract, but that it might be valid insofar as a negligence claim is concerned, and that the district court really failed to understand Florida law on that point. Am I missing something? Yes, Your Honor. What happened in Ivy Plants, that was a two-to-one decision from the Fourth District in the 1970s. And in that case, the facts were it involved a public utility that had a monopoly that was seeking to enforce an exculpatory clause against a private customer. And subsequent case law has confined Ivy Plants to those facts. In that case, they were concerned with the unequal bargaining power between the public utility and the consumer. In other cases, they have said that only applies when you're dealing with a public utility. If you're dealing with a private contract between parties of equal bargaining power, such as this case, that's when the line of cases that we cite in our brief is applicable. So isn't one other difference between this case and Ivy Plants? You read the exculpatory clause here, and not only is it very broad, but it refers to contract claims specifically. The one in Ivy Plants didn't. And I guess, you know, far be it from me to tell the Florida courts how to manage their own business, but, I mean, to just kind of like say, yeah, even though this exculpatory clause says it applies to contracts, it doesn't. That just seems, I don't know, like we're just going to completely rewrite the thing? Right, and that's what we're saying the court was not at liberty to do. I mean the case law dealing with private contracts between private parties holds them accountable to the language that they select in their contract. Now the flip side to me anyway, at least from an equitable perspective, is that can it really be the law that the party who insists on this exculpatory clause sort of heads I win, tails you lose? Because either the court enforces the clause, in which case you're off scot-free. Or the court says, woof, this clause is so broad it invalidates the entire contract. And now, good news, Revelax, there's no contract on which you can be sued. Now here, sadly for you, there are misrepresentation claims that remain even if the contract is wiped off the books. But that wouldn't necessarily be the case, right? I mean you could have a straight, innocent breach of contract claim with a similar exculpatory clause embedded in the contract that would just sort of, I don't know, heads I win, tails you lose for them, for you, damned if you do, damned if you don't for the other side. Well, it's not heads I win, tails you lose because the evidence showed that these were negotiated and agreed to in exchange for lower prices. Revelax said they would not be able to offer their services at the prices that they were offered but for these. And in fact, they were designated as essential terms of the contract. And that's another distinction between this case and Ivey. But on the flip side, if the court were to either not enforce the exculpatory clause or were to agree with the district court that it renders it illusory and therefore the contract is void, they're left with an unjust enrichment claim. That's the alternative. It's not as if they don't have recourse. They could go back to trial and unjust enrichment. The odd thing is you usually can't have an unjust enrichment claim when you have a written contract. Right. So that's why if you invalidate the contract and say it's void, ab initio, then you don't have the written contract and you're left with unjust enrichment. So it's not as if they don't have recourse. And they did plead a fraud claim here but they later dropped that claim. So that's not an issue. That's the only case law that in Florida that allows the court to selectively apply an exculpatory clause of this nature is that they say you can apply it to the negligence. You have to apply it to the negligence and the breach of contract, but you're not allowed to apply it to an intentional tort or a fraud claim. And we don't dispute that, but they dropped their fraud claim in this case. So if you look, it's been a wide variety of different types of cases where the courts have upheld this. There's gym membership cases, racetracks, security alarm systems. They've upheld these types of provisions and all those different types of scenarios in Florida when you're dealing with private parties. It's a different story in Ivy Plants when you're dealing with a public utility. So what does it even mean then? Is there even a case out there that you think where the exculpatory clause would be so broad that it would in fact render a contract illusory? What, at the end of the day, do you promise to do? We promise to provide our services at lower prices to create this website. And this company is a company that's been around for 20 years. It has relationships with major corporations throughout the world. It's not a fly-by-night entity by any means. But what does the enforcement of the contract against you look like? Well, the enforcement is we're not allowed to defraud you. That's not a contract claim. That exists independent of the contract. Right. What does the contract – what does the enforcement of the contract do? There is no – I agree. There is no breach of contract claim under the terms of this contract. And both parties agree that it's unambiguous that that is what the exculpatory clause says. So is there a contract with an exculpatory clause so broad in your view that it renders the contract illusory? Or is that just a unicorn? It just doesn't exist. It really doesn't exist in the private sector. The case law in Florida is clear that you can absolve yourself. That means the district court was wrong to grant summary judgment on the negligence claim. The district court didn't grant summary judgment on either of those counts. What happened was the court divided the contract in half and said, I'm invalidating the service agreement, but I'm allowing plaintiffs to proceed the trial solely on the scope of work. And our position is – That's a separate contract claim, and it may have been an error to treat that as a contract. That's a different issue. But didn't the district court throw out the negligence claim? No, Your Honor. Both the negligence and the breach of contract claim went to trial, and the verdict came back on both of those counts in favor of the plaintiff. And our position is that if the court were to – both parties agree that even their principal testified at deposition that the scope of work and the service agreement are two lungs of the same contract between the parties. They refer to each other, and they're the only two contracts between the parties, and they have provisions that incorporate each other, and they were negotiated and entered into within the same time frame. So under the Florida law, they're treated as the same contract. So if the scope of work is governed by the service agreement and the service agreement is void as illusory, or if the exculpatory clauses are enforced, then it would apply to both documents because they're all part of the same contract. So sort of back to my – maybe it's an equitable problem, but sort of great news for your client, sort of the broader the exculpatory clause, the more likely it is that you can't lose because either it's enforced and you win or it's so broad that some court invalidates the entire contract and effectively you win. Well, that's not what we argued here. We argued you should enforce the contract as written pursuant to the long line of cases in Florida that have done that. This is not the first case that this type of thing has happened, and we've cited a variety of different scenarios where the courts have upheld these types of exculpatory clauses. This is not a unique scenario, and I think those are the cases that are controlling here. It's not the government contract public cases. Even the court in its order on summary judgment was citing to Florida case law dealing with government contracts. That's a different scenario than what we're dealing with here. This is a private contract, and the binding case law in Florida has held that these types of provisions are enforceable. I see. Come back. If I'm right, though, and that the district court should have reviewed this on a claim-by-claim basis, it might be that the district court should not have allowed the negligence claim to go forward. Correct. Neither the breach of contract nor the negligence claim should have gone to the jury. Yeah, so you have like flip sides, right? So if it's claim-by-claim, the district court should not— they should have enforced it with respect to negligence, but not they would have effectively under Ivey sort of severed it out and said it's not applicable to the breach of contract claim. So contract claim survives, negligence claim goes forward. The flip side is, no, no, no, you don't go claim-by-claim, and you now—it renders the entire contract illusory, so the contract goes poof. There is no contract claim, but the negligence claim survives external to the contract, right? Well, correct, but you can only go claim-by-claim pursuant to what the language of this contract says. No, no, no, I know. I'm just saying that I think there are— so you have like mirror images of one another here. If you go claim-by-claim, you get sort of this scenario, and if you go sort of not claim-by-claim, you get this scenario. You know, either the contract claim survives and the negligence claim doesn't, or the negligence claim survives and the contract claim doesn't. I don't agree with that assessment because with the way the case law is written, you have claims—cases from all different Florida courts that have said if the contract says no negligence, no breach of contract, no gross negligence, whatever is in there. In this case, we even had no lost profits. They will enforce that as it's written, provided that it's equal bargaining power. Okay. Let's hear from your opponent. Mr. Rogers. Good morning. May it please the Court. Daniel Rogers. I'm here with Alberto Carries, and we represent the plaintiff below, Pier 1 Cruz Experts. Your Honor, it's our position that this Court should reverse for a new trial on lost profits and reverse for award of our Lodestar attorney's fees and should otherwise affirm because the exculpatory clause does not bar any of Pier 1's claims. Lost profits claim did appear to me to be too speculative based on what little evidence there was about it. Yes, Your Honor. We understand that that's what Judge Demetrio-Leyes found. He agreed with Your Honor on that particular point, but we believe that there was enough evidence in this record to create a jury issue, and in fact, Judge Demetrio-Leyes, in granting the Rule 50 motion, did say that he believed that there was sufficient, or excuse me, I believe he said that in the context when he was dealing with the witness, that he believed that there was sufficient evidence here for a jury to make a determination about lost profits. And so if you look at the standard under Florida, under the WWGAY mechanical case, there's two elements that we need to establish. First, that there was a cause of lost profits here, and second, that there is some standard by which to determine it. Now, we don't need to make that determination of the amount with exactitude. A reasonable approximation under Florida law is enough. And so in this particular case, there is undisputed evidence at trial of causation. Both Revolex witnesses testified that this software would have increased profits, as well as Pier 1, Cruise Expert's financial manager, Ms. Perez, testified that it would increase the profit, I mean, increase the number of cruise sales, and therefore increase the number of profits. Perez's testimony looks to me wholly speculative. Your Honor, I understand. We believe... ...that Pier 1 would actually double the number of cruises sold based on what? Your Honor, it was based upon her experience in 10 years in the cruise industry and selling cruises in Brazil. They understand the Brazilian cruise market. They understand how to sell them through various distribution channels. In fact, they have 300 sub-agency distribution channels that they use. The online presence, in her opinion, was simply another distribution channel. You've been tendered as a lay witness? Yes, Your Honor. I think you just referred to her as an expert. I think that if it were a financial manager, if I misspoke, Your Honor, I apologize. There's an objection, though, that that testimony that you were referring to would have to be expert testimony. She was a lay witness. The district court sustained it, and that's it. Yes, Your Honor, and we're not arguing an abuse of discretion in that ruling in her limiting her further testimony. Our argument is based upon the testimony that was in the record sufficient. We believe that there was enough here. Remember, the Florida standard is not exactitude. It's a reasonable approximation. All you need to do is provide a standard or a yardstick, and we believe her testimony provided that, especially in the context of the Florida case law that says that the only uncertainty that prevents the recovery of lost profits going to the jury is uncertainty as to causation, and there's no uncertainty as to causation here. But let me move on to the next issue, Your Honor, which is the question that the court... Excuse me. Before you do, would you go back to counsel's closing sentence to us where he said, you know, the Florida law gives extremely broad protection to these exculpatory clauses in private contracts. First of all, do you agree with that statement, and is there anything in the record about whether the parties had equal bargaining power or whether they specifically negotiated for this exculpatory clause which provided no remedies? So, Your Honor, first, we do not believe that these exculpatory clause are universally enforced in Florida. In fact, if you look at the cases that are cited on the other side, they are cabined to certain restrictive areas such as alarm service contracts and things like that. In a commercial setting like this, in fact, what the Florida law says is that you strictly construe these clauses against the party that's trying to enforce them, that these types of exculpatory clauses are generally disfavored under the law, but there are certain limited exceptions for certain types of negligence claims usually that they allow them to go forward. Now, in addition, if you look at the cases that are cited on the other side, a lot of them involve some situation where there's still some kind of contractual remedy that's provided by the exculpatory clause. Usually it's like a limited nature of the damages, you know, like limited to the costs or something like that. So those types of contracts are not necessarily illusory. They're not the type of contract that we specifically have here. There is no case that involves this type. I mean, this is an exculpatory clause on steroids. I've never seen anything kind of this serious before that prevents any type of recovery. And under hornbook Florida law, these types of clauses will render that situation... render these illusory, render the entire agreement illusory. It's our position that in that circumstance, you sever the provision. You do not then take and invalidate the entire contract. But I believe, as was discussed earlier, we don't believe in this particular case that makes a material difference because either way, either we get there on our breach of contract or we get there on our negligent misrepresentation. Whether you sever the exculpatory provision or whether you invalidate the whole contract, we think we still get our jury question and we think the verdict is still affirmed and we also think we can get a new trial on lost profits if your honors agree with that. Now, with respect to your question, your honor, about the negotiation of that particular provision, I do not recall anything specific that that provision of the contract was negotiated between the parties. We have to remember that my clients are from Brazil. My clients' English is not their first language, so they testified kind of what they understood some of these provisions to mean, which might not have been the same as somebody where English was their first language. But we don't believe that the relative bargaining positions of the parties is necessarily the dispositive issue here. Now, to address the court's question about the Ivey case, we tend to agree, I believe, and as Judge Newsom stated, is that this clause in the Ivey's case was a generic clause that just basically barred claims and it didn't specify the type of claim, whether in contract or tort. It was ambiguous as to those types of points. And so therefore, the court in Ivey, in applying that clause, then said, well, we're going to construe this clause and say, okay, well, maybe it would apply to bar a negligence claim, but it will not apply to bar a breach of contract claim. That is not the clause in this case. The clause in this case unambiguously and clearly bars both contract and tort claims. And so we do analyze it on a claim-by-claim basis, and we look at that clause and say, does it bar a breach of contract claim? Yes. Does it bar, by its clear terms, a negligence claim? Yes. So under both of those circumstances, it bars the claims, it bars all claims. It renders the contract illusory if you're going to go down that road. What this made me think of is like the doctrine of constitutional avoidance or constitutional doubt, where we've got a statute that might plausibly be read two ways. If one of the two ways renders the statute unconstitutional, then we'll choose the other reading. But if the statute is clear as a bell and we'd have to just completely rewrite the thing in order to save it from invalidity, then we just say, look, we can't do that. And it seems like in Ivey, you've got like a constitutional avoidance analogy possible open to the court. Here, I just don't see one. Absent just completely rewriting the thing. I agree with Your Honor's interpretation. And we also agree that you cannot rewrite this provision. And so in essence, what my counsel on the other side and what Revolex is trying to do is that we'll say, okay, well, you know, you can rewrite this provision to excise out the bar on contract claims and excise out the bar on direct damages, and therefore you would miraculously have an enforceable exculpatory clause under Florida law. Well, respectfully, that's not how you can do it. You're not allowed to rewrite the contract language like that, especially when the contract is supposed to effectuate the intent of the parties. And as counsel said, it's very clear the intent of the parties was not to allow direct damages on breach of contract claims. So you cannot in any way, shape, or form rewrite this. So I do have a question for you, though, and you started to go down this road, and I don't mean to derail you, but is there a boomerang effect here as to your attorney's fees claim? Because your attorney's fees claim sort of depends on the existence of a contract in the first instance. And so if your argument in Roman I, basically, is the thing was so broad that it rendered the entire contract illusory, there was never a contract to begin with, then how is your argument in Roman II or III or IV or whatever, but in any event, we get attorney's fees pursuant to the contract? Right. Because under the Florida Supreme Court case, which everybody agrees, you know, the David versus Van Der Noord case, which is the Florida Supreme Court case that dictates the outcome here, it says that if the contract once existed, even if it's later declared unenforceable, and that's where we have a situation where they are trying to – they were trying to enforce this contract all the way through the Rule 50 motions. Yeah, I mean I get it. I guess it's a little philosophical, but isn't illusoriness – I mean I guess the root word. I'm not a Latin scholar, but it's something like illusion. There was an illusion of a contract, but it never in fact existed. This is something that runs to contract formation. It's like so fundamental that the contract never in fact existed. And then you might have other things that, you know, like that render the contract voidable or something, but this is kind of like a steroidal kind of argument that renders the whole thing illusory as if it never happened, right? Well, Your Honor, I would disagree. I don't think that this is a situation where because it's illusory, it's as if the party – there was never an acceptance of an offer. Here there was an acceptance of an offer, and the parties operated under that agreement for a period of time, and it only became illusory once there was a breach and the remedy was denied, right? So all of the parties operated as if there was an agreement the entire time. And so this is not a situation where the cases that have said that they're denying the recovery was when there was never an acceptance of the contract, right? Or there's a situation where – oh, I'm sorry, Your Honor. No, no, no, just quickly. I mean I guess I'm trying to get my head around this. Aren't you saying in effect that there might have been an offer and acceptance of something, but there was no consideration for the contract? I mean it's been a long time for me in first-year contracts, but I mean wouldn't that be sort of a formation issue that says like it never happened? Your Honor, yeah. In a fictional type of situation, what the case law that says is that even if you entertain the fiction of rescission, right? So here we're entertaining the fiction that they never agreed to the contract to begin with because there was no consideration. The party still operated as if there was a contract the entire time, and it's only later declared unenforceable. And you have a situation – some of the cases – It seems to me your attorney's fee provision has – or argument has a more fundamental problem. As I understand it, what Florida law really requires with respect to attorney's fees is reciprocity. That is, you know, if one side can get attorney's fees for a certain kind of contract enforcement, then it goes both ways as to that issue. But when I look at the fee provision here, it's about attorney's fees for a suit for delinquent fees, right? And that's not what this enforcement action was about. It seems to me there's no need for reciprocity, and then there's no – even if we assume that there's some kind of survivability of the attorney's fee provision for this otherwise illusory contract, this is just not one where the reciprocity required by Florida law has any operation. Am I wrong? Respectfully, yes, Your Honor. We disagree with that position. And so let's look at what the contract says. The fee provision in 4.3 says that my client will have to pay attorney's fees incurred by Revilex, quote, in collecting delinquent fees. Okay. That's what the provision says. Right. This wasn't that. So if we look to what happened in the pleadings and at trial, Revilex all the way through the Rule 50 motion at trial was trying to collect on what they believed to be delinquent fees through their affirmative defense number 8 on set-off. Through an affirmative defense? They were trying to reduce our recovery by collecting on the unpaid fees. That's what they argued in their defense. And more to the point, Your Honor, they believed that it justified attorney's fees. What Florida case tells us that that kind of reciprocity requirement applies to a defense like set-off? We cited a number of cases. We cited a number of cases to the district court and in our brief that stood for the proposition that whether you are in a plaintiff or a defense posture when you're trying to do that, it doesn't matter as long as you were trying to enforce the contractual provisions. Secondly is that, Your Honor, Revilex believed that their affirmative defense number 8 was sufficient to trigger the attorney's fees provision because immediately after pleading the set-off affirmative defense, the next paragraph says that we are entitled to our attorney's fees under 4.3 of the contract. The next thing that we need to look at, Your Honor, is the reciprocity statute under Florida law, which is 57.105 subsection 7. The operative language in there says, if a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, and that's what they were trying to do to enforce the contract to collect on the delinquent attorney's fees as a set-off. Here's the operative language, Your Honor. The court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract. And this is certainly an action with respect to the contract in which we were the prevailing party. So therefore, under 57.105 subsection 7, and under clear Florida law, as well as the way this case was tried all the way through the Rule 50 case, we are certainly entitled to our attorney's fees under the contractual fee provision, regardless of whether the court ultimately determines the contract is unenforceable because it's illusory. Okay, thank you, Mr. Rogers. Thank you, Your Honor. So as we see it, the court really has three options here. First, the court can enforce the contract as written, in which case the exculpatory clause, as everyone agrees, bars both the negligence and the breach of contract claim. The final judgment should be reversed in favor of revolux. The second option is to agree with counsel and the district court that this provision renders the contract illusory. And as Your Honor pointed out, illusory is defined by the law in reference to consideration. It is an essential element of the contract. Furthermore, under the expressed terms of this contract, the parties have stated that this exculpatory clause is an essential term. And when a provision is designated as an essential term, that means that the parties would not have entered into this contract. There was no contract without this term. So if that invalidates... They'll have the negligence claim, and their recovery on that could be affirmed. Well, no, because the language of this provision specifically references negligence. And we've cited to a variety of cases. I just want to... Why isn't the clock running? We've cited two cases, and there's a long line of Florida cases dealing with the private sector. It's not just the burglar alarm cases, which I think are very analogous to this. It had a very similar provision, which barred negligence, breach of contract. This is actually another 4th District case, more recent than the Ivy Plants cases, the El Luria and Sun case. The court found that it barred negligence and gross negligence in the Continental v. Honeywell case from the 3rd District. It barred breach of contract, negligence. There was a construction contract case which barred negligent misrepresentation. We cited that one in our brief. That was the Windstar case from the 2nd DCA. There were racetracks, gyms, boat storage, athletics contracts, amusement parks. It's not just specific scenarios. If it's a private contract, these types of provisions will be... If we agree, though, with your opponent that it rendered the contract illusory, then the negligence claim survives. No, it doesn't, because... Why? The contract goes poof, but you've got a negligence claim that exists outside the contract. If the contract was... There is no contract. There's no exculpatory clause. The reason is this. This provision was designated as an essential term. So what? There's no contract. Well, but the case law says that if the court does not enforce an essential term of the contract, or otherwise determines that the contract is void, then an essential term of the contract has failed, so... No, there's no contract, and now you have a negligence claim. Well, I'd have to go back and look at that in some more detail, but... I mean, is there a reason why the negligence claim wouldn't survive if the contract goes poof? That wasn't something that they argued in this case. We've got to figure out what the right answer is. Sure, but they haven't assigned that as an error in this case. They haven't determined that the court erred by determining that the contract was illusory. So that's not something that they've... Right, I mean, they want the opposite, right? I mean, they got their negligence claim. They went to trial on the negligence claim, got some fees, right? They're good. So, I mean, you're the one who wants to make the negligence claim go away, right? Well, that's correct. In a negligence claim, there's no attorney's fee provision, so that would definitely... That's a different issue. Different issue, right. Certainly. And so, yes, I think our position is that... They were awarded damages on the negligence claim. Right. Primarily, our argument is this. The heart of our argument is that if you follow Florida case law that's dealing with these types of contracts, they don't declare them illusory. They don't void the contract. What they do is they say that if it is not a public utility situation, and it's a contract between private parties, it's enforced as written. And that's what we are asking the court to do. Enforce this. This was a contract that was entered into. The plaintiff testified that he read the contract, he understood the contract, he had the opportunity to consult with an attorney before signing the contract, and he voluntarily entered into this contract. And in exchange, Revolux offered its services for a lower price. All right. So you agreed with my characterization, I think, of illusoriness as running to consideration. Correct. So what exactly is the, I guess I'll call it, the enforceable consideration that your client provided in entering into the contract? We offered our services at the lower prices. And if you said... And there's a case that we cite in our brief. And if you failed to do it, then what? Well, the case that we cite in our brief has allowed this type of provision to stand. It's not that, I mean, they made a decision based on our reputation and that if the contract fails or it doesn't work out, the remedy is to no longer do business with us. And that's been allowed under Florida law. This is not the first case. I'm not advocating for a change in the law. I'm advocating for the court to apply Florida case law that has dealt with these types of contracts. I think what we're doing right now is debating the merits of the long line of cases that have upheld these types of provisions. And I don't think we're really at liberty to do that. We have to follow what Florida law says about this. And that's what we're asking the court to do. So can I ask a question? I think you started out your reply by saying we have three options. One is to enforce the contract as written. One is to declare that it's illusory. And what would be the consequence of that? Well, the consequence of that, certainly for the breach of contract count, that would be out. They would have a claim of unjust enrichment. And I know the court has put on the table, this is really the first time this has come up, is whether the negligence count itself could survive. I don't know the answer to that question per se without having going back and reviewed it. But our position would be that you would have to reverse the final judgment because these two contracts are part of the same agreement between the parties, and then there would be a new trial on unjust enrichment. And then the third option is if you follow the IV plants, which our position is that's not applicable here because you can't selectively apply an expulpatory clause in a contract between private parties, then it would be the same result because this is an essential term of the bargain. They would not have entered into this agreement without it, and therefore the agreement is void. It would be a new trial on unjust enrichment. All right, so can I ask you one last question? I may be missing something, but you've now said several times, sort of, this is the first I've heard of the contract being declared illusory and the negligence claim surviving, right? I thought that's exactly what happened. The district court said the contract is illusory. Now we're going to trial on a negligence claim. My understanding was that the reason why that happened is because the court allowed the scope of work to proceed. Right, so as to Judge Breyer's point, you've got the Sal contract claim, and I thought you also had a negligence claim. My understanding is that that survived because the scope of work survived. Okay, okay. Okay, we have your case. Thank you. Thank you. Antwine versus the United States.